# EXHIBIT #2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BRIAN PAUL HYDE,

      Plaintiff,

v.

JASON KASS, DEPUTY
PETROVSKIY, DEPUTY
DOMINKA, DEPUTY NOWAK,
and DEPUTY LUCKINO,

      Defendants.

_____/

Case No. 2:19-cv-13403
Hon. Jonathan J.C. Grey

### ORDER DENYING DEFENDANTS' MOTION FOR REMITTITUR (ECF No. 108), GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS (ECF No. 111), AND DENYING AS MOOT DEFENDANTS' MOTION FOR LEAVE TO FILE A SUR-REPLY (ECF No. 119)

On November 18, 2019, Plaintiff Brian Paul Hyde filed a complaint alleging Defendants Jason Kass, Deputy Nikita Petrovskiy, Deputy Jonathan Dominka, Deputy Bartosz Nowak, and Deputy Matthew Luckino used excessive force in violation of Hyde's Fourth, Fifth, and Eighth Amendment rights and failed to intervene in violation of 42 U.S.C. § 1983. (ECF No. 1.) Hyde also alleged state law claims of intentional infliction of emotional distress and battery. (*Id.*) On March 5,

2024, a jury found that Kass, Luckino, and Petrovskiy used excessive force against Hyde. (ECF No. 103.) The jury awarded Hyde $1.00 in compensatory damages and $20,000 in punitive damages. (*Id.*) The jury also found in favor of Dominka and Nowak and against Hyde on the claim of excessive force. (*Id.*) On April 8, 2024, Kass, Luckino, and Petrovskiy filed a motion for remittitur. (ECF No. 108.) On April 11, 2024, Hyde filed a motion for attorney fees and costs. (ECF No. 111.) Both motions are fully briefed. On May 16, 2024, the defendants filed a motion for leave to file a sur-reply regarding the motion for attorney fees. (ECF No. 119.) The Court finds that the parties have adequately briefed the motions and therefore considers them without oral argument. E.D. Mich. LR 7.1(f).

For the following reasons, the motion for remittitur (ECF No. 108) is **DENIED**, the motion for attorney fees and costs (ECF No. 111) is **GRANTED IN PART AND DENIED IN PART**, and the motion for leave to file a sur-reply (ECF No. 119) is **DENIED AS MOOT.**

## I.  BACKGROUND

Hyde alleged that he was arrested on a warrant in the City of St. Clair Shores, MI in June 2018. On July 14, 2018, Hyde was incarcerated in the Macomb County Jail, where the defendants allegedly restrained

him in a chair. Hyde further alleges that he was blindfolded, a bag was placed over his head, and Kass repeatedly used a taser to apply electric shocks to Hyde's groin area. Petrovskiy, Dominka, Nowak, Masakowski, and Luckino allegedly choked and punched Hyde repeatedly, as well as forcefully pushed Hyde's head towards his feet. Hyde was allegedly left bound in a chair for 4 to 5 hours after being beaten. Hyde also alleged that he was kept in isolation while incarcerated until February 12, 2019.

## II. DEFENDANTS' MOTION FOR REMITTITUR

### A. Legal Standard

The Court may relieve a party from a final judgment, order, or proceeding provided the party sets forth sufficient grounds that justify relief. Fed. R. Civ. P. 60(b)(6). While punitive damages may properly be imposed to further a State's legitimate interests in punishment and deterrence, the Due Process Clause of the Fourteenth Amendment prohibits "grossly excessive" punishment. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996). To determine whether punitive damages are grossly excessive and, thereby, unconstitutional, the Court must evaluate 1) the degree of reprehensibility of the defendant's misconduct; 2) the disparity between the actual or potential harm suffered by the plaintiff

3

and the punitive damages award; and 3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Gore*, 517 U.S. at 575; *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003).

## B. Analysis

### 1. Degree of Reprehensibility

The Court will first evaluate the degree of reprehensibility of the defendants' misconduct. Defendants argue that Kass, Luckino, and Petrovskiy briefly used the necessary amount of force required to place Hyde in the restraint chair. Defendants further argue that there was no testimony at trial that showed their conduct was undertaken with intentional malice, trickery, or deceit. Defendants also claim that there was no testimony that they engaged in conduct evincing an indifference to or reckless disregard of inmate health or safety.

Hyde counters that *Gore* views "crimes marked by violence or the threat of violence" as more serious than nonviolent crime. *Gore*, 517 U.S. at 576. Hyde emphasizes defendants' alleged violent conduct, specifically by claiming Kass tased him in the groin three times, Petrovskiy punched him, and Luckino choked him and punched him in the head. Hyde argues

4

that the jury's punitive damages award is supported by the reprehensibility of defendants' conduct. Hyde also argues that he initially sought $33 million in punitive damages for ongoing emotional pain and suffering, as he does not have access to healthcare or mental health services. Defendants counter that Hyde had access to free mental health services while at Macomb County Jail and argue he still has access to free mental health services.

Hyde further argues that defendants engaged in intentional malice, trickery, and deceit by failing to record the incident and by placing Hyde's restraint chair out of view of security cameras. Defendants deny their failure to record was intentional. Instead, they claim Kass did not bring his body-worn camera because he had just started his shift and was rapidly responding to the disturbance caused by Hyde. Additionally, they argue that Kass only discharged his taser twice and stopped using it because it failed to subdue Hyde. Lastly, the defendants claim that Petrovskiy's shoulder strike of Hyde was necessary to successfully subdue Hyde.

While some force may have been necessary to restrain Hyde, the use of violence by the defendants, the type of force used, and the jury's

5

Case 2:19-cv-13403-JJCG-EAS ECF No. 120 PageID.2931 Filed 03/26/25 Page 6 of 25

finding that excessive force was used weigh heavily in Hyde's favor. *See Kidis v. Reid*, 976 F.3d 708, 724 (6th Cir. 2020) (finding that "[v]iolent behavior is deplorable and is conduct warranting punitive damages."); *McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 739 (6th Cir. 2002) (finding reprehensibility where the "jury found that the police officers used excessive force and intentionally assaulted plaintiff."). While it is unclear whether Kass intentionally did not wear his body camera and whether Hyde was intentionally placed out of the cameras' view, the jury found that defendants' use of excessive force was intentional, willful, and malicious. Therefore, defendants' conduct support a finding that the jury's punitive damages award may be constitutional.

## 2. Ratio of Punitive Damages to Actual Damages

Defendants rely on *Campbell* to argue that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Campbell*, 538 U.S. at 425. Defendants also argue for the application of *Campbell's* conclusion that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.* Defendants also cite the Sixth Circuit Court of Appeals decision in *Kidis*, in which

6

the court reversed the trial court's denial of remittitur and reduced the punitive damages award from $200,000 to $50,000. *Kidis*, 976 F.3d at 719.

Hyde argues that there is no precise formula for determining a proper ratio between punitive and compensatory damages. He further argues that *Gore* justifies a higher ratio when compensatory damages are low, specifically in cases where "a particularly egregious act has resulted in only a small amount of economic damages." *Gore*, 517 U.S. at 582. If the Court finds the punitive damages award is not within a reasonable range, Hyde argues that the award is not so far removed from reason that it could not have resulted from a fair deliberation. *See Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1395 (6th Cir. 1990). Additionally, Hyde asserts that the punitive damages award in this case does not shock the conscious of the court and, therefore, should not be remitted.

The current ratio between Hyde's awarded punitive damages and compensatory damages is 20,000:1. While the Supreme Court does champion a single-digit ratio in *Campbell*, the Sixth Circuit has recognized a higher ratio "in the rare instance where a § 1983 plaintiff suffers an invasion of a constitutional right unaccompanied by notable

7

physical or economic harm." *Kidis*, 976 F.3d at 716 (citing *Romanski v. Detroit Ent., LLC*, 428 F.3d 629, 646 (6th Cir. 2005)). Nevertheless, courts "customarily still reduce the punitive damages award so that the ratio of punitive to compensatory damages is, at the very most, in the single digits." *Kidis*, 976 F.3d at 717 (citation omitted). Additionally, higher ratios are "reserved for cases with exceedingly reprehensible conduct." *Id.* While the alleged violence enacted against Hyde is certainly reprehensible, the high ratio between punitive and compensatory damages weighs in the defendants' favor.

### 3. Comparable Cases

Defendants identify three unpublished cases as comparable cases due to similar nominal compensatory damages awards. The first case is *Martin v. Harris*, which involved a deputy sheriff who allegedly violated plaintiff's civil rights by unlawfully entering and searching his home. No. 87–5596, 1988 WL 24227, at *1 (6th Cir. Mar 17, 1988). At the conclusion of trial, the jury found in favor of the plaintiff and awarded him $1.00 in nominal damages and $25,000 in punitive damages. *Id.* The defendant appealed the jury's verdict, and the Sixth Circuit found that the trial court failed to direct a remittitur. *Id.* The Sixth Circuit remanded the

8

case, instructing the trial court to reduce punitive damages to $10,000. *Id.*

The second case is *Riley v. Kurtz,* in which a correctional officer allegedly violated an inmate's constitutional rights by improperly opening the inmate's mail and writing a false misconduct report. *Riley v. Kurtz,* No. 98-1077, 1999 WL 801560, at *1 (6th Cir. Sept. 28, 1999). After trial, the jury awarded the inmate $5,003 in compensatory damages and $20,000 in punitive damages. *Id.* The Sixth Circuit Court of Appeals ordered a remittitur reducing the compensatory damages award to $3.00 and the punitive damages award to $1,000. *Id.* at *9.

The third case is *Wilson v. Wilkins,* in which a jury found that the defendant intentionally and unreasonably seized the plaintiff by confining her in his moving patrol car. *Wilson v. Wilkins,* No. 3:08-0057, 2012 WL 859579, at *2 (M.D. Tenn. Mar. 13, 2012). The jury awarded the plaintiff $1.00 in compensatory damages and $80,000 in punitive damages. *Id.* The *Wilson* court granted defendants motion for a new trial or for remittitur and suggested a reduced punitive damages award of $7,500. *Id.* at *6.

9

Case 2:25-cv-11178-JJCG-KGA ECF No. 1-3, PageID.46 Filed 04/24/25 Page 11 of 26

Hyde offers five of his own instructive cases—a mix of in-circuit and out-of-circuit cases—which all involve punitive damages awards for more than $15,000. *See McHugh v Olympia Ent., Inc.*, 37 F. App'x. 730, 739–740 (6th Cir. 2002) (affirming the district court's denial of remittitur for a $1.2 million punitive damages award); *Kidis*, 976 F.3d at 723 (remanding the case and ordering the district court to enter remittitur reducing punitive damages award to no more than $50,000 despite nominal compensatory damages award of $1.00); *Blackledge v. Carlone*, 126 F. Supp. 2d 224, 229 (D. Conn. 2001) (denying defendant's request for remittitur of $40,000 punitive damages award); *Schultz v. Thomas*, 649 F. Supp. 620, 625 (E.D. Wis. 1986) (granting defendants' request for remittitur of $80,000 punitive damages award as to each defendant to $40,000, respectively); *Smith v. City of Oakland*, No. 07-6298, 2011 WL 5325484, at *5 (N.D. 5 Cal. Nov. 3, 2011) (finding punitive damages awards of $15,000 and $25,000 were constitutional).

Defendants argue that all of Hyde's cases are distinguishable from the case at issue. Defendants claim that the plaintiff in *McHugh* had significant physical injuries and was awarded $200,000 in compensatory damages, which is a 6:1 ratio compared to punitive damages. *McHugh,*

10

37 F. App'x. at 739. Defendants reassert that the jury only awarded Hyde $1.00 in compensatory damages, resulting in a 20,000:1 ratio of punitive to compensatory damages.

Defendants further argue that the plaintiff in *Blackledge* was sprayed in the face twice with cap stun and, therefore, the 40:1 ratio between her punitive and compensatory damages was reasonable. *Blackledge*, 126 F. Supp. 2d at 230. Defendants, once again, juxtapose Hyde's 20,000:1 ratio to the lower ratio in *Blackledge.* In *Schultz,* the court granted a remittitur because a 640:1 ratio was considered a "windfall." *Schultz,* 649 F. Supp at 624. Lastly, in *Smith,* the plaintiffs were awarded more than a nominal compensatory damages award. *Smith,* 2011 WL 5325484, at *1.

The Court finds the cases cited by defendants are not sufficiently comparable because none of the cases involved acts of violence. *See Martin,* 1988 WL 24227, at *1 (involving unlawful entry and search of plaintiff's home); *Riley,* 1999 WL 801560, at *1 (involving improper opening of inmate plaintiff's mail and a defendant's false misconduct report); *Wilson,* 2012 WL 859579, at *2 (involving intentional and unreasonable seizure of plaintiff in defendant's patrol car). Hyde's cases

11

are more comparable. However, defendants are correct to note that the differences in compensatory damages in cases like *McHugh* and *Smith* make them less compelling comparisons. *See McHugh*, 37 F. App'x. at 733 (awarding \$200,000 in noneconomic damages); *Smith*, 2011 WL 5325484, \*1 (awarding a total of \$205,050 in actual damages). Nevertheless, *Kidis*, *Blackledge*, and *Schultz* are comparable because they involve punitive damages awards that exceed a single-digit ratio with compensatory damages awards, respectively. *See Kidis*, 976 F.3d at 723 (finding a 50,000:1 ratio appropriate); *Blackledge*, 126 F. Supp. 2d at 231 (finding a 40:1 ratio appropriate); *Schultz*, 649 F. Supp at 626 (finding a 320:1 ratio appropriate).

As the only comparable Sixth Circuit case, the Court finds *Kidis* best serves as a guidepost in this matter. In *Kidis*, the court found no more than \$50,000 was reasonable after officers kneed, kicked, and choked a plaintiff who was not resisting arrest. *Kidis*, 976 F.3d at 713–714. The *Kidis* plaintiff also brought a successful § 1983 against the officers for Fourth Amendment violations due to the officers' use of excessive force. *Id.* at 713. In *Kidis*, as is the case in this matter, the jury awarded plaintiff \$1.00 in compensatory damages. *Id.* The *Kidis* court

12

reduced the jury's punitive damage award from $200,000 to no more than $50,000, so Hyde's current award is well within an acceptable range. The *Kidis* court's reasoning for reducing the punitive damages award hinged heavily on the jury's finding that the defendant officers were not a proximate cause of plaintiff's injuries. *Id.* at 718–719. Here, while the compensatory damages award was nominal, the jury did find that Hyde suffered damages as a result of defendants' use of excessive force. Accordingly, defendants' motion for remittitur is **DENIED**.

## III. PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS

Under 42 U.S.C. § 1988, the court has discretion to allow reasonable attorney fees and costs to the prevailing party in a case brought under 42 U.S.C. § 1983. *See* 42 U.S.C. §§ 1983, 1988. A party is considered prevailing if they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *superseded in part by statute*, Prison Litigation Reform Act, 42 U.S.C. § 1997e, *as recognized in Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1169 (9th Cir. 2024) ("Although *Hensley* remains good law and is controlling in most § 1983 cases, the enactment

of the Prison Litigation Reform Act ("PLRA") displaced *Hensley* in actions brought by prisoners.").

A prevailing plaintiff "should ordinarily recover an attorney fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429. "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. However, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney fee reduced simply because the district court did not adopt each contention raised." *Id.* "But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* The district court is instructed to "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435.

The Supreme Court has offered little guidance as to what constitutes a special circumstance that would defeat a fee award. *Hescott v. City of Saginaw*, 757 F.3d 518, 523 (6th Cir. 2014). Therefore, the Sixth

14

Circuit determines special circumstances on a case-by-case basis. *Id.* However, "[a] rule that eliminates attorneys' fees in civil-rights cases due to the size of the damages awarded would seriously undermine Congress' purpose in enacting § 1988." *Hescott*, 757 F.3d at 525 (citations omitted). The non-prevailing party bears the burden "to make a strong showing that special circumstances warrant a denial of fees." *Id.* Additionally, "courts have made clear that special circumstances should not be easily found." *Id.* (quoting *Cleveland v. Ibrahim*, 121 F. App'x 88, 90 (6th Cir. 2005)).

Hyde argues no special circumstances exist that would preclude his attorney fees and costs. He further argues that his fees were calculated with the lodestar method, which is presumptively reasonable. Hyde claims that due to the novel and complex nature of his excessive force claim, his attorney fees reflect heightened time and labor commitments from his counsel.

Defendants argue that while Hyde is the prevailing party, his decision to not settle the case unreasonably inflated his attorney fees. Additionally, defendants contest the lack of a supporting affidavit for Hyde's attorney John Alexander. Hyde has since supplemented his

15

motion with an affidavit from Alexander. Defendants also claim Alexander's submitted timesheet was improperly prepared and contained billing errors. Alexander's affidavit attests to the appropriateness and accuracy of his timesheet.

Defendants further argue that instances of block billing, work done on failed or dismissed claims, and unnecessary work billed on Alexander's timesheet should be stricken. Hyde counters that the law does not prohibit block billing and the work done on unsuccessful claims may still entitle his attorneys to compensation if all claims share a common core of facts. If the Court decides not to strike all of Alexander's attorney fees, defendants request that his hours be significantly reduced in light of Hyde's minor degree of success in the litigation.

Additionally, defendants argue that other members of Hyde's legal team—Michael Jones, Jonathan Marko, and Devynn Stepowski—should not receive their requested compensation. Specifically, defendants argue that Marko and Stepowski were not sufficiently involved in the case to warrant payment and Jones' hourly rate is too high. Hyde again points to the lack of case law cited by defendants and argues that there is no precedent for reducing or striking any of his calculated attorney fees.

16

Lastly, defendants argue that Hyde rejected their Rule 68 offer of judgment in the amount of $50,000. Rule 68(d) requires that "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). Defendants claim Hyde's total judgment does not exceed the offer of judgment and, therefore, any fees incurred after the offer was rejected are not recoverable. Hyde argues that the offer of judgment does not apply because it was offered by Macomb County and was predicated upon defendants receiving a judgment of no cause of action. Since the defendants did not receive that judgment, Hyde argues the Court should award the entire amount of attorney fees.

Although Hyde only received nominal compensatory damages, he is still the prevailing party for purposes of 42 U.S.C. § 1988. *See Farrar v. Hobby*, 506 U.S. 103, 112 (1992) ("[A] plaintiff who wins nominal damages is a prevailing party under § 1988."); *Kidis*, 976 F.3d at 720–721 (finding plaintiff was prevailing party in § 1983 litigation despite award of nominal compensatory damages). As the prevailing party, Hyde is entitled to reasonable attorney fees and costs unless defendants show special circumstances exist that render such an award unjust.

17

Hyde has addressed part of defendants' argument against Alexander's attorney fees by submitting an affidavit and claiming Alexander prepared his own timesheet. Defendants further argue against the inclusion of 25 hours that Alexander block billed. However, there is no case law that supports reducing an award of attorney fees simply because block billing was used. *See Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 705 n.7 (6th Cir. 2016) (citing *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 371 (6th Cir. 2014) ("[B]lock billing can be sufficient if the description of the work performed is adequate."). Although defendants point to instances of courts reducing fees from Hyde's attorneys for block billing, this case only concerns one instance of block billing. *Cf. Sevy v. Barach*, Case No. 17-13789, 2022 WL 4234951, at \*7 (E.D. Mich. Sep. 14, 2022) (finding a reduction in attorney fees appropriate where "[i]n addition to being non-contemporaneous, *many* entries [we]re block billed.") (emphasis added). Regarding the singular instance where Alexander block billed 25 hours for securing litigation funding, the Court finds the description detailed enough to avoid a reduction.

Defendants further request a 35% reduction in Alexander's fees, in part because of unsuccessful settlement efforts. Nevertheless, defendants offer no case law to support their argument that failed settlement efforts should be excluded from attorney fees. Defendants final argument for a reduction of Alexander's fees relies on Hyde's limited success on his claims. This issue will be addressed later as it relates to the reasonableness of Hyde's requested attorney fees as a whole.

Returning to defendants' argument to lower hourly rates, they contend that Alexander's and Jones' hourly rates should be lowered according to the State Bar of Michigan 2023 Economics of Law Report. Specifically, defendants seek to reduce Alexander's hourly rate from $580 to $342 and reduce Jones' hourly rate from $550 to $275. The Court does not find cause to reduce Alexander's hourly rate, considering his over 30 years of practice, the location of his firm in metro Detroit, and because the rate falls between the 75th and 95th percentile for civil rights attorneys. However, because Jones only has around 5 years of experience, the Court finds it reasonable to lower his hourly rate to $350, which is the median rate for a civil rights attorney. Defendants also believe Marko should not receive any compensation because Marko never filed an

19

appearance in this matter and did not appear at trial. The Court agrees. Although Marko only spent a little more than 24 hours on this matter, it is in the Court's discretion to deny his request for fees. Defendants further argue that Stepowski, a paralegal, should not be compensated for any work billed after the offer of judgment. However, defendants offer no case law to support their argument. Therefore, the Court declines to reduce Stepowski's fees. Adjusted for the aforementioned reductions, Hyde's attorney fees currently amount to $262,944. (Alexander's unadjusted fees of $132,124 + Jones' reduced fees of $127,505 + Stepowski's unadjusted fees of $3,315 = $262,944).

Although Hyde was only successful on one claim of excessive force against three defendants, he is entitled to fees for dismissed or unsuccessful claims that arose out of "a common core of facts." *Hescott*, 757 F.3d at 526. Nevertheless, a district court may reduce attorney fees for work expended on unsuccessful claims that were based on distinctly different legal theories than the successful claim. *See Kidis*, 976 F.3d at 721 (citing *Hensley*, 461 U.S. at 434). While Hyde's claims against defendants Dominka and Nowak were unsuccessful, they arose from the same events and legal theories as Hyde's successful claim. The same can

be said for the dismissed claims against Masakowski and Macomb County.

The Court's final inquiry to determine the reasonableness of Hyde's requested attorney fees and costs is an evaluation of Hyde's degree of success. Although Hyde requested $34.1 million in damages, the jury only awarded him $20,001. Hyde also declined a settlement offer of $100,000. The Court finds that, despite prevailing on one claim against three defendants, Hyde was not highly successful in this litigation. Specifically, the huge difference between what Hyde requested compared to what he received in damages points to modest success. *See McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 495 (6th Cir. 2014) ("[T]he amount of damages awarded as compared to the amount sought in a damages claim is one way to think about the degree of success."). Hyde's rejection of a settlement that outsized his damages award also compels the Court to assess Hyde as modestly successful in this matter. *See Hines v. City of Columbus, Ohio*, 676 F. App'x 546, 556 (6th Cir. 2017) ("Considering a rejected settlement offer is one way of measuring the degree of success."). Accordingly, the Court finds it appropriate to reduce Hyde's attorney fees by 50% to the amount of $131,472. *See Hines*, 676 F. App'x at 556 (finding

21

50% reduction of attorney fees appropriate where plaintiff succeeded on only one claim and was awarded $30,000 despite requesting $5 million); *see also Sevy v. Barach,* Case No. 17-13789, 2022 WL 4234951, at *10 (E.D. Mich. Sept. 14, 2022) (reducing attorney fees by 50% where plaintiff received a $3,000 damages award despite requesting $9.5 million).

Defendant's final argument, that Hyde is not entitled to fees because he declined a Rule 68 offer, is unavailing. On January 9, 2023, defendants offered Hyde an offer of judgment in the amount of $50,000. However, the $50,000 offer was against Macomb County only. The offer as to the defendant officers was a judgment of no cause of action. Nevertheless, even if the Court did attempt to quantify a judgment of no cause of action and compare it to the amount Hyde obtained at trial, the offer was not apportioned. Specifically, the offer was made as to all of the defendants that were still involved in the case at that time—Kass, Nowak, Dominka, Petrovskiy, Masakowski, and Luckino. Masakowski was dismissed before trial, and the jury found in favor of Dominka and Nowak. The Court cannot accurately compare the joint offer made by all defendant officers to Hyde's judgment award that was obtained only as to Kass, Luckino, and Petrovskiy. *See Harbor Motor Co. v. Arnell*

22

*Chevrolet-Geo, Inc.*, 265 F.3d 638, 648 (7th Cir. 2001) (finding it impossible to compare a Rule 68 offer that was jointly made by two defendants to the judgment awarded at trial against only one defendant); *see also Johnston v. Penrod Drilling Co.*, 803 F.2d 867, 870 (5th Cir. 1986) (finding that the "figure represented by the joint offer of [two defendants] on the one hand and the dollar judgment obtained only against [one defendant] on the other are not comparable figures.").

Nevertheless, to be thorough, the court will attempt to compare the Rule 68 offer to Hyde's judgment award. *See generally Andretti v. Borla Performance Indus.*, 426 F.3d 824, 837 (6th Cir. 2005) ("Even though comparing the value of damages to [nonpecuniary relief in a Rule 68 offer] is like comparing apples and oranges," the court found it appropriate to attempt the comparison). The offer of judgment is dated January 9, 2023. By that date, Alexander had billed 227.8 hours, Jones had billed 17.5 hours, and Stepowski had billed no hours. After adjusting Jones' fee and applying a 50% reduction, Hyde's pre-offer attorney fees amount to $69,124.50. Hyde's pre-offer fees, in addition to his $20,001 damages award, come to a total of $89,125.50. Since that amount exceeds the amount offered by Macomb County in the offer of judgment, the Court

23

finds Hyde is not subject to the fee-shifting penalty of Rule 68. Accordingly, Hyde's motion for attorney fees is **GRANTED IN PART AND DENIED IN PART** and Hyde is entitled to the reduced amount of $131,472.

## IV. DEFENDANTS' MOTION FOR LEAVE TO FILE A SUR-REPLY

In light of the Court's ruling on Hyde's motion for attorney fees and costs, defendants' motion for leave to file a sur-reply is **DENIED AS MOOT**.

## V. CONCLUSION

Accordingly, defendants' motion for remittitur (ECF No. 108) is **DENIED**, Hyde's motion for attorney fees and costs (ECF No. 111) is **GRANTED IN PART AND DENIED IN PART** and Hyde is entitled to $131,472 in fees, and defendants' motion for leave to file a sur-reply (ECF No. 119) is **DENIED AS MOOT**.

     **SO ORDERED.**

                                 **s/ Jonathan J.C. Grey**
                                 Jonathan J.C. Grey

Dated: March 26, 2025            United States District Judge

# Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 26, 2025.

**s/ S. Osorio**
Sandra Osorio
Case Manager